| | | |
|---|---|---|
| ERIC GILES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| ———————————————— | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and supplemental § 2255 motion to vacate, (Doc.

No. 11).

## I.    BACKGROUND

Petitioner was indicted in a marijuana trafficking conspiracy involving numerous co-

conspirators including the co-defendant with whom he was tried, Kyle Corsi.  (Crim. Case No.

3:09-cr-203, Doc. No. 102). The counts pertaining to Petitioner are: Count (1), conspiracy to

possess with intent to distribute a mixture and substance containing a detectable amount of

marijuana (100 kilograms or more) in violation of 21 U.S.C. § 846, 841(a)(1), 841(b)(1)(B);  Count

(2), conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i),

(a)(1)(B)(ii), 1956(h); Count (3), conspiracy to structure a currency transaction to evade reporting

requirements in violation of 18 U.S.C. § 371, 31 U.S.C. § 5324(a)(3);  Counts (4) and (6),

possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924(c);

Count (5), possession with intent to distribute a mixture and substance containing a detectable

amount of marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), 18 U.S.C. § 2; and Counts

(7) and (8), possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Id.,

Doc. No. 102 at 4).

The facts of the case, as summarized by the Fourth Circuit Court of Appeals, are as follows:

Giles and Corsi were members of a marijuana distribution ring operating in Chapel Hill and Charlotte, North Carolina. As the ring-leader, Giles would travel to California to procure "high-grade" marijuana. Giles would then send packages containing several pounds of marijuana through the mail from a fictitious business—Norcal Athletics—to Corsi and other distributors back in North Carolina. When a package arrived, Giles would send a text message that "the eagle has landed" to notify a given distributor that the package was ready for pickup and distribution. To finance the purchases, the distributors made large cash deposits into bank accounts that Giles managed. However, pursuant to Giles' instructions, the distributors kept their individual deposits under $10,000 to avoid federal reporting requirements. Over its three years of operation, the distribution ring sold over one hundred kilograms of marijuana and made deposits totaling several hundred thousands of dollars.

On October 26, 2009, after over a year tracking the operation and intercepting packages containing marijuana en route from "Norcal Athletics" to North Carolina, federal agents arrested Giles in Charlotte. With Giles' consent, agents searched his vehicle and confiscated his cellular phone and approximately one pound of marijuana. At that time, Giles identified his source of marijuana in California, but stated that any packages sent by Norcal Athletics contained only athletic gear, and denied knowledge of the contents of the package of marijuana seized from his car. That same day, agents searched Giles' residence, and discovered receipts and other documentation linking him to shipments from California to North Carolina.

On the evening of Giles' arrest, six federal agents and two uniformed police officers went to Corsi's residence to attempt to speak with him about the marijuana distribution ring….. Agent Morgan informed Corsi that the officers had information that there might be narcotics in the residence, and hoped to talk with him and obtain his consent for a search. Corsi became agitated and denied the officers consent to enter the house.… After several minutes, Corsi shouted … that he knew why the officers were there and that he was ready to talk and "be a man about it."

… Corsi .. admitted that he had been receiving high-grade marijuana from California through the mail. He explained that his supplier would send text messages indicating when the packages had arrived in North Carolina and were ready for pickup. Corsi also explained that other members of the ring would deposit money into the drug supplier's bank account to prepay for the marijuana, but stated

that he had never done so. However, after Agent Morgan showed Corsi bank surveillance photographs of him and an unidentified woman (who Corsi then identified as his girlfriend) making cash deposits, Corsi admitted to making several deposits into the drug supplier's account. After approximately thirty minutes, the agents concluded the interview and left the residence without arresting Corsi.

A week later, on November 3, several agents and officers returned and arrested Corsi at his residence…. Agent Morgan ascertained from the officer that Corsi had been informed of his Miranda rights, and then asked Corsi several clarifying questions regarding his October 26 statements. Corsi confirmed several statements from his earlier interview, including that packages he received from Norcal Athletics had contained marijuana.….

United States v. Giles, 518 Fed. Appx. 181, 183-85 (4th Cir. 2013).

Prior to trial, the Government raised a potential Bruton[1] problem due to its intent to introduce co-Defendant Corsi's statement mentioning Petitioner. It proposed using neutral pronouns "drug supplier" or "source of supply" in place of Petitioner's name. (Id., Doc. No. 242 at 5); see also (Id., Doc. No. 118).  Petitioner's counsel objected that the proposed pronouns are not neutral because they imply wrongdoing, and that the jury would "certainly realiz[e]" that these pronouns refer to Petitioner. (Id., Doc. No. 242 at 5-6). The Court overruled the objection and found that the use of pronouns "allows the jury to understand the confession in context, but avoids the constitutional issue in an appropriate way and in a way that's been approved by the Fourth Circuit." (Id., Doc. No. 242 at 6).

The Government called numerous unindicted co-conspirators[2] at trial who testified that Petitioner was the head of a marijuana distribution organization that lasted for three years and brought hundreds of pounds of marijuana into North Carolina from California, and transferred over

---

[1] Bruton v. United States, 391 U.S. 123 (1968).

[2] The operative indictment names as unindicted co-conspirators Keith Kraszewski, William Skach, Barrett Fischer, Ryan Grubb, and Joyce Tedder, who pled guilty to various charges before Petitioner and co-Defendant's trial, at which all of them except Tedder testified. Two other unindicted co-conspirators who are not included in the operative indictment, Sara Beth Bartholomew and Christopher Loth, also testified at trial.

one million dollars of marijuana sale revenue from North Carolina back to California to fund additional marijuana purchases.

The Government presented evidence that police found a firearm in the home Petitioner shared with his girlfriend in December 2007.[3] (Id., Doc. No. 268 at 141). Petitioner's girlfriend gave police permission to search the home when they arrived to investigate a domestic dispute. Police discovered a firearm on the top shelf of a cabinet within inches of marijuana, money, and a bong. (Id., Doc. No. 268 at 147-49). The Government argued that this gun possession violated § 922(g) because Petitioner had a 1991 conviction for assault with great bodily injury in violation of California Penal Code Section 245(a)(1), which is a felony offense punishable by more than a year in prison. Defense counsel refused to stipulate that the California conviction is a felony, arguing that it is a misdemeanor conviction under a "wobbler" statute. The Court ruled that the California conviction is a prior felony conviction for purposes of § 922(g), and the only issue for the jury in that regard is whether Petitioner is the same person who was convicted in the California case. (Id., Doc. No. 269 at 8-10).

The Government introduced co-Defendant Corsi's pre-arrest statement to police during DEA Agent Christopher Morgan's direct testimony, with the Bruton modifications it had proposed pre-trial. During this testimony there were approximately 14 references, both by the prosecutor and Agent Morgan, to co-Defendant's "drug supplier" or "source of supply." (Id., Doc. No. 270 at 84-89).

In addition to the numerous unindicted co-conspirators' testimony, the Government also introduced evidence of packages that Petitioner sent from California to various North Carolina addresses that corresponded to marijuana shipments, some of which were intercepted by United

---

[3] A second incident was alleged to have occurred in 2006, as charged in Count (4), but the jury acquitted Petitioner of that count so it will not be discussed further in this Order.

4

States Postal Inspectors, bank account activity by Petitioner and the co-conspirators in amounts just under the $10,000 reporting limit that corresponded to marijuana purchases in California and shipments to North Carolina, and surveillance images of Petitioner in California banks and post offices corresponding to drug transactions and shipments.

Petitioner chose not to testify at trial or present a defense case. (Id., Doc. No. 270 at 201).

The jury found Petitioner not guilty of Count (4), and guilty of the remaining counts with the special findings that 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana was reasonably foreseeable to Petitioner in Count (1), and that the objects of the conspiracy in Count (2) were to violate 18 U.S.C. § 1956(a)(1)(A)(i) (with intent to promote) and 18 U.S.C. § 1956(a)(1)(B)(ii) (with intent to avoid a transaction reporting requirement).  (Id., Doc. No. 159).

Petitioner filed a *pro se* motion for new trial prior to sentencing in which he attached "newly discovered evidence," *i.e.*, a 1998 California court document containing a crossed-out entry stating "17(b) REDUCE FELONY TO MISD." (Id., Doc. No. 201). Petitioner argued that this entry shows that his 1991 assault conviction was reduced from a felony to a misdemeanor. The Government filed a California court official's declaration that no motion to reduce was filed in Petitioner's case, but that such a motion was filed in his co-defendant's case, and the crossed-out entry appeared to correct a human error. (Id., Doc. No. 212). The Court denied the *pro se* motion for new trial because Petitioner was not diligent in uncovering the proffered evidence, and that it would not likely alter the verdict because the crossed-out entry refers to a co-defendant. United States v. Giles, 2011 WL 13152579, *1-2 (Aug. 15, 2011). The Fourth Circuit affirmed on June 17, 2016, because, after reviewing the record, it found no abuse of discretion in either of bases for the Court's ruling. United States v. Giles, 652 Fed. Appx. 210 (4th Cir. 2016). The United

States Supreme Court denied certiorari on March 20, 2017. <u>Giles v. United States</u>, 137 S.Ct. 1359 (2017).

The presentence investigation report ("PSR") grouped together Counts (1), (2) and (5) and used the base offense level of for violation of 18 U.S.C. § 1956, for an underlying offense from which the laundered funds were derived, conspiracy to possess with intent to distribute marijuana, based on the quantity of drugs for which Petitioner is responsible (at least 100 but less than 400 kilograms of marijuana). (<u>Id.</u>, Doc. No. 237 at ¶ 30-31). Two levels were added because Petitioner was convicted of violating 18 U.S.C. § 1956. (<u>Id.</u>, Doc. No. 237 at ¶ 32). Four levels were added because Petitioner was a leader/organizer of the offense. (<u>Id.</u>, Doc. No. 237 at ¶ 34). The resulting adjusted offense level subtotal for that group was 32. (<u>Id.</u>, Doc. No. 237 at ¶ 36).

The base offense level for Count (3) is the base offense level of six plus the number of offense levels corresponding to the value of the funds (14 levels) resulting in a base offense level of 20. (<u>Id.</u>, Doc. No. 237 at ¶ 20). Two levels were added because Petitioner knew the funds were proceeds of unlawful activity. (¶ 38). Two more levels were added because Petitioner was convicted of violating 31 U.S.C. § 5324 and he committed the offense as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period. (¶ 39). This resulted in an adjusted offense level subtotal of 24 for Count (3). (<u>Id.</u>, Doc. No. 237 at ¶ 43).

The base offense level for Counts (7) and (8) was 20 because Petitioner violated 18 U.S.C. § 922(g)(1) after sustaining a felony conviction for a controlled substance offense. (<u>Id.</u>, Doc. No. 237 at ¶ 43-44). Two levels were added because the offense involved three firearms. (¶ 45). Four levels added because Petitioner used or possessed the weapon in connection with the felony offense of distributing marijuana. (<u>Id.</u>, Doc. No. 237 at ¶ 46). The adjusted offense level for Counts (7) and (8) was 26. (<u>Id.</u>, Doc. No. 237 at ¶ 50).

The offense guideline that produces the highest offense level is the one for Counts (1), (2) and (5), and therefore, the adjusted offense level subtotal for that group of 32 was used. (<u>Id.</u>, Doc. No. 237 at ¶ 51, 52); <u>see</u> USSG § 3D1.3(b). No Chapter Four enhancements applied, so the resulting total offense level was 32, plus the statutory minimum sentence for Count (6) pursuant to § 924(c). (<u>Id.</u>, Doc. No. 237 at ¶ 53, 55, 56). Petitioner had two criminal history points and a criminal history category of II. (<u>Id.</u>, Doc. No. 237 at ¶ 65). The resulting guidelines imprisonment range was 135 to 168 months plus a mandatory consecutive five-year sentence for Count (6). (<u>Id.</u>, Doc. No. 237 at 103).

The Court sentenced Petitioner in the middle of the advisory guideline range to a total of 196 months' imprisonment (136 months as to Counts (1) and (2), 120 months as to Counts (3), (7) and (8), 60 months as to Count (5), all concurrent, and 60 months as to Count (6), consecutive), followed by a total of four years of supervised release. (<u>Id.</u>, Doc. No. 250); (<u>Id.</u>, Doc. No. 272 at 55-57).

Petitioner argued on direct appeal that the Court erred by admitting text messages obtained from Petitioner's cellular phone as party admissions under Fed. R. Ev. 801(d)(2)(A), rather than statements between co-conspirators under Fed. R. Ev. 801(d)(2)(E). The Fourth Circuit affirmed on April 12, 2013. It rejected Petitioner's claim as refuted by the record. Further, considering the defendants' failure on appeal to demonstrate that any of the admitted text messages were not sent "in the course and furtherance of the conspiracy," it was unable to conclude that the Court abused its discretion by admitting the text messages. <u>United States v. Giles</u>, 518 Fed. Appx. 181, 189 (4th Cir. 2013) (quoting <u>Bourjaily v. United States</u>, 483 U.S. 171, 186 (1987)). The Fourth Circuit further found that Petitioner's un-briefed argument that the Court used the wrong evidentiary

standard when determining whether a conspiracy existed at the time the text messages at issue were sent, even if preserved, was meritless. Id.

On July 23, 2015, counsel filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582, guidelines Section 1B1.10 and Amendment 782. (Id., Doc. No. 296). The Court granted the motion on July 13, 2016, and reduced the sentence to 109 months for Counts (1), (2), (3), (7) and (8), or time served if less than that figure, and the sentence remained unchanged for Counts (5) and (6).

Meanwhile, Petitioner filed the instant § 2255 motion to vacate on November 14, 2014, raising a number of claims of ineffective assistance of trial and appellate counsel, and several other claims of constitutional error. (Doc. No. 1). The Government filed a Response addressing each of Petitioner's claims. (Doc. No. 6). Petitioner filed a reply. (Doc. No. 10). On June 23, 2016, Petitioner filed a "Motion to Vacate Supplement (Johnson Claim)," in which he raises a new claim based on Johnson v. United States, 135 S.Ct. 2551 (2015). (Doc. No. 11).

## II.     SECTION 2255 STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance

by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy because the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 697.

To establish prejudice in the context of appellate representation, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also

<u>United States v. Mannino</u>, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under <u>Strickland</u> is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

## III. DISCUSSION

### A. Claims of Ineffective Assistance of Trial Counsel

The Government argues that Petitioner's claims ineffective assistance of trial counsel fail on the merits. For the following reasons, the Court agrees.

1.     Petitioner contends that trial counsel was ineffective for failing to argue he is actually innocent of violating § 922(g) because his 1991 California conviction for assault with great bodily injury is a misdemeanor, not a felony. He appears to argue that counsel was ineffective for failing to present at trial a 1998 document which demonstrates that the California court converted his assault conviction into a misdemeanor.  (Crim. Case No. 3:09-203-RJC-DCK, Doc. No. 201-1 at 9).

Section 922(g)(1) makes it unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to, *inter alia*, "possess in or affecting commerce, any firearm or ammunition…."

A crime is considered a felony under California law if it is punishable by death, imprisonment in state prison, or imprisonment in county jail for 16 months, or two or three years. Cal. Penal Code §§ 17(a), 1170(h). When a crime is punishable at the court's discretion either by state prison or county jail, it is a misdemeanor "for all purposes" if, *inter alia*, "the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor, unless the defendant at the time of his or her arraignment or plea objects to the offense being made a misdemeanor, in which event the complaint shall be amended

to charge the felony and the case shall proceed on the felony complaint." Cal. Penal Code § 17(b)(3). Section 245 is a so-called "wobbler" statute because it can result in imprisonment in a state prison greater than a year or imprisonment in a county jail for less than a year, and therefore wobbles between a felony and a misdemeanor. United States v. Adams, 716 F.3d 1066, 1070 (8th Cir. 2013).

Petitioner's claim of ineffective assistance is refuted by the record insofar as counsel argued at trial that Petitioner's 1991 California assault conviction is a misdemeanor that cannot support a § 922(g) violation. Counsel's failure to discover, obtain, and present the 1998 California document at trial was not ineffective assistance because it does not demonstrate that the California conviction is, in fact, a misdemeanor and thus would not have probably changed the outcome of trial. Petitioner raised this issue in his *pro se* motion for a new trial, at which time the Court examined the 1998 California document and found that it did not demonstrate that Petitioner's 1991 conviction had been converted to a misdemeanor. The Court found that the crossed-out notation purportedly converting the felony conviction to a misdemeanor resulted from human error and actually referred to the co-defendant. The Fourth Circuit affirmed the Court's ruling on this issue, Giles, 652 Fed. Appx. at 210, and it need not be reconsidered here. See generally Pepper v. United States, 562 U.S. 476, 506 (2011) (law of the case doctrine generally provides that, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (*quoting* Arizona v. California, 460 U.S. 605, 618 (1983)); Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017).

The Court has already determined that the 1998 document did not refer to Petitioner's case and would not have resulted in a different trial outcome, and the Fourth Circuit affirmed. It is

impossible for Petitioner to demonstrate ineffective assistance of counsel under these circumstances.

2. Petitioner contends that counsel was ineffective for allowing the Government to characterize him as a "drug supplier" and "source of supply" before the jury heard co-Defendant's redacted confession using those terms at trial, which violated Bruton v. United States, 391 U.S. 123 (1968).

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. In Bruton, the Supreme Court held that, in certain circumstances, admission of a non-testifying co-defendant's confession that inculpates the defendant violates the Confrontation Clause because the defendant has no opportunity for cross-examination. 391 U.S. at 126; see also United States v. Campbell, 935 F.2d 39, 43 (4th Cir. 1991) (holding that Bruton prohibits the admission of a statement of a non-testifying co-defendant "if it could be fairly understood to incriminate the accused"). However, a non-testifying co-defendant's statement is admissible if it is redacted to eliminate any reference to the defendant, Richardson v. Marsh, 481 U.S. 200, 211 (1987), or if "the defendant's name is replaced by a symbol or neutral pronoun," United States v. Vogt, 910 F.2d 1184, 1191 (4th Cir. 1990). If a proffered statement of one non-testifying co-defendant becomes incriminating against another by virtue of an inference from other evidence at trial, the Confrontation Clause may not be offended if those statements are redacted and a proper limiting jury instruction is given. Richardson, 481 U.S. at 208–09. On the other hand, redactions that obviously identify the defendant, even without naming him, effect a constitutional violation that cannot be cured by a jury instruction. Gray v. Maryland, 523 U.S. 185, 195–96 (1998). Gray differentiates between statements that incriminate by inference or only when linked

with later evidence and those that obviously refer to a particular person or involve inferences a jury could make even without additional evidence. Id. at 196. Only in the latter instance does a constitutional violation occur. Id. Thus, in order for the prosecution to introduce a non-testifying co-defendant's statement into evidence at a joint trial, the statement must be (1) properly sanitized, and (2) accompanied by a limiting instruction that it not be used against the defendant. See Richardson, 481 U.S. at 211; Bowie v. Polk, 2006 WL 3690652, at *1 (W.D.N.C. Dec. 11, 2006).

In the instant case, the Government introduced co-Defendant Corsi's pre-arrest statement via Agent Morgan's direct examination. The prosecutor and Agent Morgan replaced approximately fourteen references to Petitioner with "source of supply" and "drug supplier." The Court instructed the jury that co-Defendant's statement could only be considered against co-Defendant. See (Id., Doc. No. 270 at 216) ("You must not consider or discuss the evidence of one defendant's statement in any way with respect to the other defendant."). This testimony occurred after Skach and Fischer testified that Petitioner was one of their sources of marijuana supply, however, both of these witnesses testified that they had other marijuana sources besides Petitioner. See (Id., Doc. No. 268 at 72-73, 79) (Skach testifying that Gonzalez told him his "source of supply" is Petitioner, who remained the source of supply during the relevant time period, but that he also had another source of supply); (Id., Doc. No. 269 at 229-31) (Fischer testifying that he had several sources of supply during the relevant time period including co-Defendant, and that he ultimately learned that Keith Kraszeswki was getting marijuana from his roommate, Petitioner).

Petitioner's claim of ineffective assistance is refuted by the record insofar as counsel did raise a Bruton objection to the Government's use of pronouns that were not neutral because they assigned criminal liability and obviously referred to Petitioner. See (Id., Doc. No. 242 at 5-6).

Moreover, counsel cannot be deemed ineffective because no <u>Bruton</u> error occurred and, even if it did, Petitioner was not prejudiced. The use of "supplier" and "source of supply" did not necessarily point to Petitioner in this large drug distribution conspiracy in light of Skach and Fischer that they had suppliers besides Petitioner. A completely non-descriptive word like "individual" would have rendered co-Defendant's statement difficult if not impossible to understand, and the Court provided a limiting instruction. <u>See</u>, <u>e.g.</u>, <u>United States v. Lighty</u>, 616 F.3d 321, 376–77 (4th Cir. 2010) (testimony that co-defendant was accompanied by "three other people" during the offense did not violate <u>Bruton</u> because there was no way to facially identify the people without more information and it would have been unclear to the jury that the statements had been altered; only when the out of court statement is linked with in-court testimony, which defendant had the opportunity to challenge through cross-examination, might one infer that the out-of-court statement refers to defendant); <u>United States v. Oliver</u>, 513 Fed. Appx. 311, 313 (4th Cir. 2013) (district court did not abuse its discretion by denying defendant's motion to sever under Bruton where defendant's name was replaced with "the driver" because it did not result in any obvious indication of deletion and did not, standing alone, facially incriminate the defendant); <u>see also</u> <u>United States v. Kreiser</u>, 15 F.3d 635, 639 (7th Cir. 1994) (no <u>Bruton</u> error occurred when co-defendant's statement was redacted to refer to "source" during joint trial because nothing prevented the jury from supposing that a third unindicted co-conspirator participated along with defendant and co-defendant, the word "source" did not identify the defendant by race, age, size, or any other means, and the court twice instructed the jury that the confession was only admissible as to co-defendant); <u>United States v. Green</u>, 648 F.3d 569, 575-76 (7th Cir. 2011) (in a mortgage fraud case, replacing defendant's name with "straw buyer" did not violate <u>Bruton</u> even though it suggested illegal activity because the phrase could have referred to a very large class of people,

not just the defendant, and while there was other evidence introduced at trial that implicated defendant as the straw buyer, the link was not direct or obvious). Petitioner fails to explain what further objection counsel could have made that would have changed the Court's ruling under these circumstances.

Further, there is no reasonable probability that the outcome of trial would have been different regardless of any <u>Bruton</u> error due to the overwhelming evidence of Petitioner's guilt. <u>See generally United States v. Lumpkin</u>, 44 Fed. Appx. 246 (9th Cir. 2002) (finding that, if a <u>Bruton</u> error occurred, it was not prejudicial); <u>Gardner v. Ozmint</u>, 511 F.3d 420 (4th Cir. 2007) (in a capital case, counsel's failure to object to the admission of co-defendant's statements and testimony at sentencing which revealed defendant's graphic, inculpatory remarks and racial animus, was deficient, but defendant was not prejudiced because there was no reasonable probability that the jury would have issued a more lenient sentence had counsel properly handled co-defendant's testimony).

Therefore, Petitioner has failed to demonstrate either deficient performance or prejudice and his <u>Bruton</u> claim is denied.

        3.      Petitioner contends that counsel was ineffective for failing to object to the Court's application of a leadership role at sentencing.

A four-level aggravating role is applied "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive…." U.S.S.G. § 3B1.1(a). The burden is on the government to prove by a preponderance of the evidence that the sentencing enhancement should be applied. <u>United States v. Steffen</u>, 741 F.3d 411, 414 (4th Cir. 2013); <u>United States v. Grubbs</u>, 585 F.3d 793, 803 (4th Cir. 2009); <u>United States v. Garnett</u>, 243 F.3d 824, 828 (4th Cir. 2001). In distinguishing between a leadership and organizational role from

one of mere management or supervision, factors a court should consider include "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, app. Note 4.

First, Petitioner's suggestion that the jury should have determined whether he held a leadership role beyond a reasonable doubt, is legally incorrect. Sentencing judges may make findings of fact under a preponderance of the evidence standard "so long as [the] Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict." United States v. Benkahla, 530 F.3d 300, 312 (4th Cir. 2008).

The Court's application of the role enhancement to Petitioner was not objectionable because the Government proved by a preponderance of the evidence that Petitioner was a leader or organizer and the sentence is within the statutory maximum that the verdict authorized. The Government introduced evidence that Petitioner was the person who had a source of high-quality marijuana in California, repeatedly traveled to California to purchase marijuana and ship it back to North Carolina using addresses of individuals whom he compensated for receiving the packages, distributed the marijuana to several individuals who sold it for him, and instructed several individuals on the procedure for depositing the cash they received from marijuana sales into bank accounts he controlled to avoid reporting requirements and to facilitate his purchase of more marijuana.

Petitioner's sentence for each Count was within the statutory maximum for the relevant offense. Count (1), conspiracy to possess with intent to distribute marijuana, is a Class B Felony punishable by five to 40 years' imprisonment, and Petitioner was sentenced to 136 months; Count

(2), conspiracy to commit money laundering, is a Class C felony punishable by up to 20 years' imprisonment and Petitioner was sentenced to 136 months; Count (3),  conspiracy to structure a currency transaction to evade reporting requirements, is a Class C felony punishable by up to 10 years' imprisonment and Petitioner was sentenced to 10 years; Count (5), possession with intent to distribute marijuana is a Class D felony punishable by up to five years' imprisonment and Petitioner was sentenced to five years; Count (6), use and carrying a firearm during and in relation to a drug trafficking crime, is a Class A felony punishable by not less than five years' imprisonment and Petitioner received five years; and Counts (7) and (8), possession of a firearm by a convicted felon, is a Class C felony punishable by not more than 10 years' imprisonment and Petitioner received 10 years for each of those counts. See (Crim. Case No. 3:09-cr-203-RJC-DCK, Doc. No. 250); 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(ii) and 1956(h); 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 371; 21 U.S.C. § 841(a)(1) (t); 18 U.S.C. § 924(c); 18 U.S.C. § 922(g)(1). Petitioner's Counsel cannot be deemed ineffective for failing to object to the Court's application of a four-level enhancement for a leadership or organizational role under these circumstances.

Second, Petitioner argues that applying a leadership/organizational role is "duplicitous,"[4] however, the gist of Petitioner's claim appears to be that the application of a four-level role enhancement to the money laundering count constituted double counting.

Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another

---

[4] Duplicity is "the joining in a single count of two or more distinct and separate offenses" and is generally not permitted. United States v. Burns, 990 F .2d 1426, 1438 (4th Cir. 1993). A leadership enhancement derives from the advisory sentencing guidelines and is not a separate offense, so it cannot be duplicitous by definition.

Guideline provision or by application of a statute. See United States v. Reevey, 364 F.3d 151, 158 (4th Cir. 2004). "[T]here is a presumption that double counting is proper where not expressly prohibited by the guidelines." United States v. Dowell, 771 F.3d 162, 170 (4th Cir. 2014) (quoting United States v. Hampton, 628 F.3d 654, 664 (4th Cir. 2010)).

Petitioner fails to identify anything in the Guidelines that expressly prohibits application of § 3B1.1 to a money laundering conspiracy, and the Court is unaware of any case law supporting that position. See generally United States v. Bartley, 230 F.3d 667 (4th Cir. 2000) (the district court did not clearly err by finding that defendant's role in marijuana distribution and money laundering conspiracies warranted a three-level enhancement).

Petitioner's claim of ineffective assistance with regards to the leadership/organizer role is therefore denied.

4.     Petitioner contends that his convictions violate Double Jeopardy and the merger doctrine. His argument appears to be twofold. First, that a single agreement cannot support conspiracy convictions for money laundering, marijuana distribution, and structuring because only one agreement existed, and second, that the money laundering and marijuana distribution conspiracies merge because the laundered money consisted of marijuana sales "receipts" rather than "profits."

The Double Jeopardy Clause of the Fifth Amendment provides that no one shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This guarantee simply prevents "the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983); United States v. Martin, 523 F.3d 281, 290 (4th Cir. 2008). It does not, however, prohibit the legislature from punishing the same act or course of conduct under different statutes. Albernaz v. United States, 450 U.S. 333,

344 (1981). Thus, when a defendant violates more than one statute in a single course of conduct, a court may impose multiple punishments without violating the Double Jeopardy Clause if the legislature authorizes it to do so. United States v. Terry, 86 F.3d 353, 355 (4th Cir.1996). Ultimately, a court's "only task is to determine whether Congress intended to impose multiple punishments," United States v. Chandia, 514 F.3d 365, 372 (4th Cir. 2008), because "the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them [ ] resides wholly with the Congress." Whalen v. United States, 445 U.S. 684, 689 (1980).

This determination is guided by Blockburger v. United States, 284 U.S. 299 (1980), in which the Supreme Court held that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304. When applying this test in multiple punishment cases, a court's "exclusive focus" is "upon the elements of the statutory provisions in question," rather than on the particular facts of the underlying case. United States v. Allen, 13 F.3d 105, 109 n. 4 (4th Cir. 1993). If each provision requires proof of a distinct element, "then multiple punishments are presumed to be authorized absent a clear showing of contrary Congressional intent." Terry, 86 F.3d at 356 (citing Albernaz, 450 U.S. at 340).

The so-called "merger doctrine" refers to the constitutional prohibition arising out of the Double Jeopardy Clause against punishing a person twice for the same offense. United States v. Belt, 516 F.2d 873, 876 (8th Cir. 1975). Merger occurs when all of the elements of the lesser offense are necessarily included in the greater offense, so that the greater offense logically subsumes the lesser. Coates v. State of Maryland, 436 F. Supp. 226, 230 (D. Md. 1977).

The elements of a money laundering conspiracy are: (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C. § 1956(a) or § 1957; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) that the defendant knowingly and voluntarily became part of the conspiracy. United States v. Singh, 518 F.3d 236, 248 (4th Cir. 2008) (citing United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005)).

The elements of marijuana distribution conspiracy are: (1) an agreement to possess marijuana with intent to distribute existed between two or more persons, (2) the defendant knew of the conspiracy, and (3) the defendant knowingly and voluntarily became part of the conspiracy. 21 U.S.C. §§ 841(a)(1), 846; United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc).

The elements of conspiracy to structure are: (1) the existence of an agreement; (2) an overt act by one of the conspirators in furtherance of the objectives; (3) intent to agree to defraud the United States; and (4) knowledge of the reporting requirements and an act to avoid them. 18 U.S.C. § 371; 31 U.S.C. § 5324(a)(3); United States v. Winfield, 997 F.2d 1076, 1082 (1993).

First, no double jeopardy violation occurred because Petitioner's convictions for conspiracy to commit money laundering, conspiracy to distribute marijuana, and conspiracy to commit structuring each involve at least one element that the others do not. See, e.g., Corsi v. United States, 2016 WL 5422110 at *4 (W.D.N.C. Sept. 26, 2016) (rejecting co-Defendant Kyle Corsi's § 2255 argument that his convictions for money laundering conspiracy and money structuring conspiracy violate double jeopardy because structuring involves proof of an element the other does not, namely, that the defendant conspired to avoid the reporting requirement under § 3513(a) by depositing and withdrawing less than $10,000 on each occasion). Further, Petitioner fails to identify any clear showing of Congressional intent that these offenses not be punished

individually. <u>Terry</u>, 86 F.3d at 356 Therefore, they constitute separate offenses under the <u>Blockberger</u> test and counsel was not ineffective for failing to raise a meritless double jeopardy objection.

Second, Petitioner's conviction for money laundering conspiracy does not merge into his conviction for conspiracy to distribute marijuana.

At the time of Petitioner's offenses, the federal money laundering statute did not define "proceeds."[5] The United States Supreme Court addressed the issue in <u>United States v. Santos</u>, 553 U.S. 507 (2008), in which defendants involved in an illegal lottery were convicted of running an illegal gambling business as well as money laundering offenses. The Court found that the ordinary definition of "proceeds" should be used in the statute, however, that term has two ordinary meanings, either "profits" or "receipts." The Court adopted the narrower "profits" definition pursuant to the rule of lenity. <u>Id.</u>, at 513-14. The plurality noted that adopting the broader "receipts" definition would create a merger problem for statutes such as illegal gambling because, "if 'proceeds' means 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery. <u>Id.</u> Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries … would 'merge' with the money-laundering statute." <u>Id.</u> at 115-16. Justice Stevens agreed with the plurality that proceeds should be defined as "profits" with respect to the illegal gambling statute at issue in <u>Santos</u>, but suggested that the definition of "proceeds" should be determined on a case-

---

[5] Congress amended the money laundering statute in May 2009 to define proceeds to include "gross receipts," which effectively overruled <u>Santos</u>. Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111–21, § 2(f)(1), 123 Stat. 1617, 1618 (2009) (codified at 18 U.S.C. § 1956(c)(9)). Nevertheless, because the amendment was not enacted at the time of the conduct giving rise to Petitioner's convictions, this expanded definition of "proceeds" does not apply in this case. <u>See</u> <u>Hines v. Drew</u>, 634 Fed. Appx. 918, 924 (4th Cir. 2015).

by-case basis, "thereby implying that the 'profits' definition is only warranted in the context of crimes creating such merger problems." <u>Hines v. Drew</u>, 634 Fed. Appx. 918 (4th Cir. 2015); <u>see</u> <u>Santos</u>, 553 U.S. at 525-26 (Stevens, J., concurring in part) (stating that "this Court need not pick a single definition of 'proceeds' applicable to every unlawful activity, no matter how incongruous some applications may be" where, for instance, it is clear from the legislative history that Congress intended the term "proceeds" to include gross revenues for offenses such as sale of contraband and the operation of organized crime syndicates involving such sales).

Viewing the <u>Santos</u> plurality opinion and Justice Stevens' concurrence on their "narrowest grounds," the Fourth Circuit reads <u>Santos</u> to hold that, "when a merger problem arises in the context of money laundering and illegal gambling, the required solution is to define the proceeds of the illegal gambling business as its net profits." <u>United States v. Halstead</u>, 634 F.3d 270, 279 (4th Cir. 2011). On the other hand, when a merger problem arises in the context of money laundering and an illegal activity other than illegal gambling, Justice Stevens' opinion requires addressing that situation on a case-by-case approach. <u>Id.</u> "Thus, when the illegal activity includes money transactions to pay for the costs of the illegal activity, a merger problem can occur if the government uses those transactions also to prosecute the defendant for money laundering. An individual cannot be convicted for money laundering for paying the 'essential expenses of operating' the underlying crime." <u>Id.</u> at 279 (quoting <u>Santos</u>, 553 U.S. at 528). However, when the financial transactions of the predicate offenses are different from the transactions prosecuted as money laundering, the merger problem recognized in <u>Santos</u> does not even arise. <u>Id.</u>

In the instant case, the substantive offense supporting the charge of conspiracy to commit money laundering is a charge of conspiracy to distribute marijuana. <u>See</u> (<u>Id.</u>, Doc. No. 102 at 3-4). Petitioner's conviction for conspiracy to distribute marijuana does not merge with the money

laundering conspiracy because an actual financial transaction is not an element of the drug offense, and thus, <u>Santos</u> does not apply at all. <u>See</u> <u>United States v. Webster</u>, 623 F.3d 901 (9th Cir. 2010) ("Because neither the conspiracy nor the drug possession count against [defendant] presents a merger problem, neither requires narrowly defining 'proceeds' as 'profits' for the money laundering counts"); <u>United States v. Payton</u>, 437 Fed. Appx. 241, 242–43 (4th Cir. 2011) (conviction for possession with intent to distribute cocaine base does not merge into a money laundering conviction because an actual financial transaction is not an element of the drug offense). Petitioner's argument that the Government was required to prove that he used "profits" rather than "receipts" from the marijuana distribution in his money laundering offense, is legally incorrect.

Therefore, counsel was not ineffective for failing to raise these meritless double jeopardy and merger claims, and § 2255 relief will be denied.

### B. Claims of Ineffective Assistance of Appellate Counsel.

The Government argues that Petitioner's claims of ineffective assistance of appellate counsel fail on the merits. For the following reasons, the Court agrees.

1.    Petitioner contends that counsel was ineffective for failing to investigate Petitioner's claim that his 1991 California conviction is not a felony, and argue on direct appeal that he is actually innocent of violating § 922(g).

The record reveals that Petitioner does have a predicate felony conviction to support his § 922(g) offense for the reasons set forth in Section A(1), *supra*. Appellate counsel cannot be deemed ineffective for failing to raise this meritless claim on direct appeal.

2.    Petitioner contends that appellate counsel was ineffective for conceding that Petitioner's confrontation rights were not violated under <u>Bruton</u>.

Petitioner's argument that appellate counsel was deficient for failing to a <u>Bruton</u> error on direct appeal is meritless because, even if a <u>Bruton</u> error occurred at trial, it was harmless in light of the overwhelming evidence of Petitioner's guilt. <u>See</u> Section (III)(A)(2), *supra*. Therefore there is no reasonable probability that it would have succeeded had counsel raised it on direct appeal. <u>See generally</u> <u>Schneble v. Florida</u>, 405 U.S. 427, 430 (1972) (<u>Bruton</u> error does not automatically require reversal of the ensuing criminal conviction if the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error). Appellate counsel cannot be deemed ineffective for failing to raise this meritless claim. <u>See</u> <u>Greer v. Mitchell</u>, 264 F.3d 663, 676 (6th Cir. 2001) ("by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

3.      Petitioner contends that counsel was ineffective for conceding, without Petitioner's authorization, that he consented to the search of his iPhone where the search was actually unconstitutional.

The Government presented evidence at trial that Petitioner's iPhone was inside the backpack he was carrying when agents arrested him pursuant to a federal warrant. (Crim. Case No. 3:09-cr-203-RJC-DCK, Doc. No. 269 at 295) (Agent John Nash testifying that, upon his arrest, Petitioner gave consent to search his car and had a backpack with him that his phone was inside); (<u>Id.</u>, Doc. No. 270 at 27) (Agent Chris Morgan testifying that he went to arrest Petitioner on October 26, 2009, pursuant to an arrest warrant). Petitioner's contention that the warrant agents obtained to search the iPhone was somehow defective, is conclusively refuted by the record. <u>See</u> (Doc. No. 6-1). Because Petitioner has failed to demonstrate that a Fourth Amendment violation occurred, he cannot demonstrate that appellate counsel was ineffective for conceding the legality of the search

on direct appeal. See generally Berrier v. Shanahan, 2014 WL 174777, at *4 (M.D.N.C. Jan. 13, 2014). Even if counsel articulated the wrong basis for the concession on direct appeal, or did so without Petitioner's consent, Petitioner is unable to demonstrate prejudice because the Fourth Amendment claim is meritless.

4.     Petitioner appears to contend that counsel was ineffective for failing to assert issues Petitioner raised at the sentencing hearing about merger his leadership role.

Appellate counsel cannot be deemed ineffective for failing to raise these meritless issues for the reasons set forth in Section A(4), *supra.* See Greer, 264 F.3d at 676.

5.     Petitioner appears to contend that counsel was ineffective for failing to argue that the jury did not determine a drug quantity beyond a reasonable doubt for the conspiracy to distribute marijuana charged in Count (1), having only found in the jury instructions and verdict form that he possessed a "detectable amount" of marijuana, rather than a specific quantity which violated the Sixth Amendment pursuant to Alleyne v. United States, 133 S.Ct. 2151 (2013). Had counsel raised this issue on direct appeal, Petitioner's maximum sentence would have been five years' imprisonment.

The Sixth Amendment requires that any fact "[o]ther than the fact of a prior conviction ... that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). In Alleyne, the Supreme Court held that facts which increase mandatory minimum sentences must be either admitted by defendant or submitted to the jury and established beyond a reasonable doubt. 133 S.Ct. at 2163.

Conviction for conspiracy to distribute narcotics requires proof beyond a reasonable doubt: (1) "an agreement between two or more persons to engage in conduct that violates a federal drug

law;" (2) "the defendant's knowledge of the conspiracy;" and (3) 'the defendant's knowing and voluntary participation in the conspiracy." United States v. Kellam, 568 F.3d 125, 139 (4th Cir. 2009). The drug quantity attributable to a defendant charged with conspiracy is "the amount [he] agreed to distribute or possess with intent to distribute as well as the amount agreed to be distributed or possessed with intent to distribute by co-conspirators in furtherance of the conspiracy that were known to [him] or reasonably foreseeable to [him]." United States v. Jones, 658 Fed. Appx. 188, 190 (4th Cir. 2016) (citing United States v. Hickman, 626 F.3d 756, 763-72 (4th Cir. 2010); United States v. Brooks, 524 F.3d 549, 557-59 (4th Cir. 2008)). "[A] trial court is therefore obligated to instruct a jury to use Pinkerton[6] principles to determine the quantity of drugs attributable to each individual defendant involved in a drug conspiracy." Brooks, 524 F.3d at 558. That is, "[a] defendant convicted of conspiracy should be sentenced not only on the basis of *his* conduct, but also on the basis of conduct of coconspirators in furtherance of the conspiracy that was known to the defendant or reasonably foreseeable to him." United States v. Williams, 986 F.2d 86, 90 (4th Cir. 1993).

No Alleyne violation occurred because the Court sentenced Petitioner in accordance with the amount of marijuana found by the jury beyond a reasonable doubt. Petitioner was charged in Count (1) with conspiracy to possess with intent to distribute marijuana involving 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, which is punishable by not less than five, and not more than forty, years' imprisonment. 21 U.S.C. § 841(a)(1), (b)(1)(B), 846. The Court instructed the jury with regards to Count (1) that, if it unanimously concluded beyond a reasonable doubt that the substance was marijuana, it must then determine the quantity of the substance "which was possessed in furtherance of the conspiracy and

---

[6] Pinkerton v. United States, 328 U.S. 640 (1946).

was reasonably foreseeable to the defendant. Acts are reasonably foreseeable if they can be reasonably foreseen as a necessary or natural consequence of the conspiracy…." (Crim. Case No. 3:09-cr-203-RJC-DCK, Doc. No. 270 at 279). The jury found Petitioner guilty in Count (1) of conspiracy to distribute or possess with intent to distribute a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841 and 846, and also unanimously found that 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana was "reasonably foreseeable to the defendant[.]" (Id., Doc. No. 159 at 1).

The Court instructed the jury in accordance with Pinkerton principles and the jury unanimously found beyond a reasonable doubt that the amount of marijuana reasonably foreseeable to Petitioner was 100 kilograms or more. Therefore, his sentence of 136 months' imprisonment for Count (1) was within the 40-year statutory maximum for that offense and no Alleyne violation occurred. See, e.g., Jones, 658 Fed. Appx. at 190 (finding that the evidence was sufficient to support a conviction for conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin where there was substantial evidence that one kilogram or more of heroin was reasonably foreseeable to her).

Appellate counsel cannot be deemed ineffective for failing to raise a meritless Alleyne issue on direct appeal. See Greer, 264 F.3d at 676.

6.      Petitioner contends that appellate counsel was ineffective for failing to argue a fatal variance occurred when the Court constructively amended the indictment by instructing the jury that it could consider dates other than the one charged in Counts (5) and (6).

A fatal variance occurs "[w]hen the government, through its presentation of the evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment …

occurs." United States v. Randall, 171 F.3d 195 (4th Cir. 1999) (citing United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998)). A constructive amendment is a fatal variance because the indictment is altered "to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment" and thus violates the Fifth Amendment. United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991); see United States v. Floresca, 38 F.3d 706, 712-13 (4th Cir. 1994) (*en banc*). However, not all differences between an indictment and the proof offered at trial rise to the level of a fatal level of constructive amendment. See Redd, 161 F.3d at 795. When different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a "mere variance" occurs. Randall, 171 F.3d at 203. A mere variance does not violate a defendant's constitutional rights unless it prejudices him either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense. Id. When an indictment alleges that a crime occurred "on or about" a certain date, "proof need only establish beyond a reasonable doubt that the crime occurred on a date reasonably near that alleged." United States v. Ward, 676 F.2d 94, 96 (4th Cir. 1982).

Under Rule 404(b) of the Federal Rules of Criminal Procedure, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This rule is inclusive, "admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Young, 248 F.3d 260, 271-72 (4th Cir. 2001). To be admissible under Rule 404(b), prior bad act evidence "must be relevant to an issue other than character, … necessary to prove an element of the crime charged, … [and] reliable." United

States v. Blauvelt, 638 F.3d 281, 292 (4th Cir. 2011). Finally, the "probative value [of the evidence] must not be substantially outweighed by its prejudicial nature." Id. "In drug cases, evidence of a defendant's prior, similar drug transaction is generally admissible under Rule 404(b) as evidence of the defendant's knowledge and intent." United States v. Cabrera-Beltran, 660 F.3d 742, 755 (4th Cir. 2011).

Petitioner was charged in Count (5) and (6) with possession with intent to distribute a detectable amount of marijuana and possession of a firearm in furtherance of a drug trafficking crime, respectively, both of which allegedly occurred "[o]n or about December 3, 2007…." (Crim. Case No. 3:09-203-RJC-DCK, Doc. No. 102 at 12).

First, Petitioner's suggestion that the jury found him guilty in Count (6) of committing an offense on a date other than that charged is refuted by the record. The Court instructed the jury in accordance with the date charged in the indictment, on December 3, 2007, and the verdict form for Count (6) specifies that the offense occurred "on or about" that date. (Id., Doc, No. 159 at 2).

Second, Petitioner's argument that a fatal variance occurred with regards to Count (5) is meritless. During deliberations, the jury sent out a question asking: "As to Count Five, are we the jury only to consider the marijuana the police found on December 3rd, 2007 as it relates to intent to distribute?" (Id., Doc. No. 271 at 3). The Court proposed re-instructing the jury regarding Section 404(b) and Count (5), but Petitioner's counsel objected, arguing that the correct answer is "yes." (Id., Doc. No. 271 at 4). The Court explained that simply answering "yes" would artificially limit the jury's view of the evidence because other acts of possession with intent to distribute can go to Petitioner's intent on December 3, 2007. (Id., Doc. No. 271 at 5). The Court accordingly instructed the jury that events that occurred on dates other than December 3, 2007, could be considered for the "very limited purpose" of determining whether he had "the state of

mind or intent necessary to commit the crime charged in Count Five of the indictment…." (Id., Doc. No. 271 at 6-7).

The Court's response to the jury's question clarified that the charged offense was alleged to have occurred on December 3, 2007, but that other dates could be considered when determining intent pursuant to Section 404(b). This instruction accords with the applicable law and charged offense, and did not invite the jury to find Petitioner guilt of any offense other than those charged in the indictment. See generally Cabrera-Beltran, 660 F.3d at 755–56 (evidence of exceedingly similar where the same drugs were sold in similar quantities and transported in a similar manner, even allegedly using the same car in one instance, helped establish the existence of a continuing distribution scheme, it was admissible under Rule 404(b)); United States v. Hodge, 354 F.3d 305, 312 (4th Cir. 2004) ("[T]he evidence of [a defendant's prior] drug transactions was relevant and necessary in that it tended to show the existence of a continuing narcotics business...."). No fatal variance occurred under these circumstances and appellate counsel cannot be deemed ineffective for failing to raise a meritless argument on direct appeal. See Greer, 264 F.3d at 676.

Therefore, Petitioner's claims of ineffective assistance of appellate counsel will be denied.

### C. Other Claims of Constitutional Error

Finally, Petitioner raises additional constitutional claims that are procedurally defaulted and/or meritless.

1.      Petitioner contends that his conviction and sentence for violating § 922(g) violate the Fifth, Sixth, Thirteenth and Fourteenth Amendments because the predicate conviction upon which the Court relied is a misdemeanor under California law. The Government argues that this claim is procedurally defaulted from § 2255 review because Petitioner could have, but did not,

raise it on direct appeal. Petitioner appears to argue that any procedural default is excused because he is actually innocent of violating § 922(g).

Claims that could have been, but were not, raised on direct appeal are procedurally defaulted from § 2255 review. See Murray v. Carrier, 477 US. 478, 485 (1986); United States v. Frady, 456 U.S. 152, 165 (1982); Bousley v. United States, 523 U.S. 614, 621-22 (1998). Procedurally defaulted claims can nevertheless be reviewed if the petitioner demonstrates "cause and prejudice" or shows that he is "actually innocent" of the charges against him. See Murray, 477 U.S. at 485.

When using ineffective assistance of counsel to excuse procedural default of another independent claim, counsel must have been so wholly deficient as to violate Petitioner's Sixth Amendment right. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Murray, 477 U.S. at 488–89). Thus, Petitioner must show that by failing to challenge these issues, counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland, 466 U.S. at 668. The Supreme Court has explained that while ineffective assistance of counsel may establish cause for a procedural default, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray, 477 U.S. at 486.

Actual innocence means "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. To establish actual innocence, a petitioner must demonstrate that it is "more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327 (1995).

First, Petitioner's assertion that his procedurally defaulted claims were not raised at trial or on appeal because of counsel's deficient performance falls short of establishing "cause" for his procedural default. Neither trial nor appellate counsel was objectively unreasonable for failing to raise these claims because they are meritless. <u>See</u> Sections A(1), B(1), *supra*. Therefore, ineffective assistance of counsel does not excuse his procedural default of these claims and they are dismissed.

Second, Petitioner's claim of actual innocence fails because he was not convicted of a crime of which he is actually innocent. Petitioner's 1991 California conviction is a felony offense for purposes of § 922(g), therefore, Petitioner is unable to demonstrate that he is actually innocent of that offense. <u>See</u> Sections A(1), B(1), *supra.*

Third, even if this claim was not procedurally defaulted, it would fail on the merits because Petitioner's 1991 conviction is, in fact, a felony, and no constitutional error occurred. <u>Id.</u>

Therefore, this claim is dismissed as procedurally defaulted and, even if it were not defaulted, it would be denied on the merits.

      2.      Petitioner contends that his conviction for marijuana offenses violates equal protection under the Fourteenth Amendment because citizens of other states including California are not equally subject to criminal liability under marijuana laws.

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. Although the Fifth Amendment, unlike the Fourteenth, does not contain an equal protection clause, it does contain an equal protection component. <u>Bolling v. Sharpe</u>, 347 U.S. 497, 499 (1954). Therefore, the "approach to Fifth Amendment equal protection claims has ... been

precisely the same as to equal protection claims under the Fourteenth Amendment." Weinberger v. Wiesenfeld, 420 U.S. 636, 638, n. 2 (1975); Wayte v. United States, 470 U.S. 598, 610 (1985).

Petitioner's *pro se* pleadings are entitled to liberal construction, Haines v. Kerner, 404 U.S. 519 (1972), and therefore Petitioner's due process claim will be addressed under the Fifth, rather than Fourteenth, Amendment.

If a law neither burdens a fundamental right nor targets a suspect class, courts will uphold the legislative classification "so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631 (1996); see also Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985) ("legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest"). The rational basis standard applies if there is no suspect or quasi-suspect class status at issue such as race, alienage, national origin, or sex that would invoke a higher level of scrutiny. See, e.g., Cleburne, 473 U.S. at 440–42.

It has been repeatedly held that there is no fundamental right to use or possess or distribute marijuana. See United States v. Fry, 787 F.2d 903, 905 (4th Cir. 1986) ("There is no fundamental right to produce or distribute marijuana commercially."). Therefore, the rational basis standard applies to Petitioner's equal protection claim. Kuromiya v. United States, 37 F. Supp. 2d 717, 727–28 (E.D. Pa. 1999).

The statutes under which Petitioner was convicted pass the rational basis test. Congress' actions allowing jurisdictions to determine for themselves whether to suspend their local prohibitions on the use and distribution of marijuana for medical purposes, does not violate equal protection. "Local decriminalization notwithstanding, the unambiguous federal prohibitions on medical marijuana use set forth in the CSA continue to apply equally in both jurisdictions, as does

the ADA's illegal drug exclusion. There is no unequal treatment, and thus no equal protection violation." James v. City of Costa Mesa, 700 F.3d 394, 405 (9th Cir. 2012); see Boos v. Barry, 485 U.S. 312, 333 (1988) (remarking that a statute could only run afoul of the Equal Protection Clause if construed to generate unequal treatment).

Petitioner's equal protection challenge to his convictions for conspiracy to possess with intent to distribute and possession with intent to distribute marijuana are meritless and will be denied.

3.      Finally, Petitioner argues in his supplemental § 2255 motion to vacate that his § 924(c) conviction and sentence violate due process because he lacks the requisite predicate convictions for a crime of violence or drug trafficking offense pursuant to Johnson v. United States, 135 S.Ct. 2551 (2015). (Doc. No. 11).

Section 924(c) prohibits using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime…." A "drug trafficking crime" is "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2). A "crime of violence" under § 924(c) means an offense that is a felony and "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) *that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense*." 18 U.S.C.A. § 924(c)(3). The italicized language is sometimes referred to as the "risk-of-force" clause.

Johnson announced that the Armed Career Criminal Act's ("ACCA") residual clause[7] is void for vagueness, and that holding is a retroactively applicable right. Id.; Welch v. United States,

---

[7] ACCA defines a "violent felony" as any felony that:

136 S.Ct. 1257, 1265 (2016). <u>Johnson</u> addresses only ACCA's residual clause and "does not call into question application of the Act to the four enumerated offense, or to the remainder of the Act's definition of a violent felony." <u>Johnson</u>, 135 S.Ct. at 2563.

Petitioner seeks to extend <u>Johnson's</u> void-for-vagueness holding to § 924(c)(3)'s risk-of-force clause. The Fourth Circuit has not yet determined <u>Johnson's</u> applicability to § 924(c)(3)(B) and the other circuits are split on the issue.[8] This Court need not decide the issue in this case because <u>Johnson</u> is factually inapplicable to Petitioner's case. In Count (6), Petitioner was convicted of possession of a firearm in furtherance of a drug trafficking crime, *i.e.*, possession with intent to distribute a mixture and substance containing a detectable amount of marijuana in Count (5). Therefore, even if <u>Johnson</u> invalidated § 924(c)'s risk-of-force clause, it would have no bearing on Petitioner's conviction in Count (6) which is based on a drug trafficking crime.

---

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C.A. § 924(e)(2)(B) (emphasis added). The italicized portion of the definition is referred to as the residual clause.

[8] The majority of circuits have held that <u>Johnson</u> does not apply to, or invalidate, § 924(c)(3)(B) because of significant textual differences between ACCA's residual clause and § 924(c)(3)(B)'s so-called risk-of-force clause. <u>See</u> <u>United States v. Prickett</u>, 839 F.3d 697, 699-700 (8th Cir. 2016), petition for cert. filed (U.S. Dec. 30, 2016) (No. 16-7373); <u>United States v. Hill</u>, 832 F.3d 135, 145-49 (2d Cir. 2016); <u>United States v. Taylor</u>, 814 F.3d 340, 375-79 (6th Cir. 2016), petition for cert. filed (U.S. Oct. 12, 2016) (No. 16-6392); <u>Ovalles v. United States</u>, 861 F.3d 1257 (11th Cir. 2017); <u>see also</u> <u>United States v. Davis</u>, 677 Fed. Appx. 933, 936–37, 2017 WL 436037, at *2 (5th Cir. Jan. 31, 2017) (unpublished), petition for cert. filed (U.S. May 3, 2017) (No. 16-8997). Only the Seventh Circuit has held that <u>Johnson</u> applies to invalidate § 924(c)(3)(A). <u>See</u> <u>United States v. Cardena</u>, 842 F.3d 959, 995-99 (7th Cir. 2016). Even it has acknowledged that "the case for distinguishing § 924(c)(3)(B) is not altogether unconvincing," but has held that it is bound by its precedents holding that § 924(c)(3)(B) is unconstitutionally vague until the United States Supreme Court holds otherwise pursuant to *stare decisis*. <u>United States v. Jackson</u>, 865 F.3d 946, 954 (7th Cir. 2017); <u>see</u> <u>United States v. Vivas-Ceja</u>, 808 F.3d 719, 721 (7th Cir. 2015) (finding that <u>Johnson</u> invalidates the residual clause in 18 U.S.C. § 16(b)); <u>United States v. Cardena</u>, 842 F.3d 959 (7th Cir. 2016) (relying on <u>Vivas-Ceja</u> to hold that the "residual clause" in § 924(c)(3)(B) is the same as the one in § 16(b) and therefore is also unconstitutionally vague).

Petitioner's suggestion that his conviction in Count (5) for violating 21 U.S.C. § 841(a)(1) is not a "drug trafficking crime" under § 924(c)(2), is incorrect. The Fourth Circuit has long recognized that possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) is a "drug trafficking crime" pursuant to § 924(c). See United States v. James, 834 F.2d 92, 92-93 (4th Cir. 1987) ("§ 924(c) by its terms unambiguously applies to crimes of possession with intent to distribute"). Petitioner's argument that his conviction in Count (5) is invalid because it violates equal protection is meritless for the reasons set forth in Section C(2), *supra*. To the extent that Petitioner attempts to argue there was insufficient evidence to support Count (5), and thus an inadequate basis to find a § 922(g) violation, this claim is procedurally defaulted and meritless. See generally Section C(1), *supra*.

Therefore, Johnson does not apply to Petitioner's case and his supplemental § 2255 motion to vacate is denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court dismisses and denies Petitioner's § 2255 petition and supplemental motion to vacate.

IT IS, THEREFORE, ORDERED that:

1.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and his "Motion to Vacate Supplement (Johnson Claim)," (Doc. No. 11), are DISMISSED and DENIED.

2.    IT IS FURTHER ORDERED that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 8, 2017

Robert J. Conrad, Jr.
United States District Judge